FILED
U.S. District Court
Northern District of Iowa
October 20, 2003

By: pm

Copies mailed/faxed to counsel of record, pro se
parties
and others listed here:

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

CESAR JIMENEZ, SAN JUANA
JIMENEZ, individually and as next best
friends of LUCILA JIMENEZ, and all
other similarly situated employees,

       Plaintiffs,

vs.

EMILIO DURAN and VICTORIA
DURAN, d/b/a E & V CONTRACT
FARMS,

       Defendants.

No. C 01-3068-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING THE
PARTIES' CROSS-MOTIONS FOR
PARTIAL SUMMARY JUDGMENT**

———————————

## TABLE OF CONTENTS

*I.  INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A.  Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B.  Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*II.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   *A.  Standards For Summary Judgment* . . . . . . . . . . . . . . . . . . . . . . 6
   *B.  Arguments Of The Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   *C.  The FLSA And The "Agriculture" Exemption* . . . . . . . . . . . . . . . . 8
      *1.  General principles* . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      *2.  The "Holly Farms" analysis* . . . . . . . . . . . . . . . . . . . . . . 9
      *3.  The "Holly Farms analysis" in this case* . . . . . . . . . . . . . . 10
         *a.  Were the defendants engaged in "primary"
             agriculture?* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
         *b.  Were the plaintiffs engaged in "secondary"*

*agriculture?* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    *i.*       *Pertinent considerations* . . . . . . . . . . . . . . . . 14
    *ii.*     *Work "on a farm"* . . . . . . . . . . . . . . . . . . . . 15
    *iii.*    *Connection to farming operations* . . . . . . . . . . 16
    *iv.*    *Is the necessary connection present here?* . . . . 19

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Were the plaintiffs exempt from the overtime pay provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, during their employment with the defendants' business of vaccinating and tending to poultry, because the plaintiffs were "employees employed in agriculture"? The defendants have moved for summary judgment on the portion of the plaintiffs' FLSA claim seeking overtime wages, on the ground that the plaintiffs *were* exempt agricultural employees. In response, the plaintiffs have cross-moved for partial summary judgment on the same issue, conceding that there are no disputed facts on this issue, and agreeing that the question should, therefore, be decided as a matter of law, albeit in their favor.

## I. INTRODUCTION

### A. Procedural Background

On August 20, 2001, the original plaintiffs, Cesar Jimenez and San Juana Jimenez, individually and as next best friends of Lucila Jimenez, filed their original Complaint in this matter (docket no. 1) against defendants Emilio Duran and Victoria Duran, doing business as E & V Contract Farms, described collectively herein as the "Duran Defendants." Among the Jimenezs' claims was a claim for overtime wages pursuant to

Section 7 of the FLSA, 29 U.S.C. § 207. The Jimenezs filed an Amended Complaint on October 7, 2002 (docket no. 18), which added additional plaintiffs and additional claims against a second set of defendants, the "Ruiz Defendants." On December 30, 2002, the Jimenezs again filed an Amended Complaint (docket no. 28), this time to add certain jurisdictional elements. By order dated February 6, 2003 (docket no. 36), the court granted the Ruiz Defendants' motion to sever the actions against the two groups of defendants. Eventually, on August 4, 2003, the original plaintiffs filed yet another Amended Complaint (docket no. 51) against the Duran Defendants, reflecting the severance of claims ordered by the court. Thus, the claims presently before the court are the following: a claim, in Count I, to recover overtime wages and unauthorized payroll deductions pursuant to the FLSA; a claim, in Count II, to recover unauthorized payroll deductions pursuant to Iowa's Wage Payment Collection Act, IOWA CODE CH. 91A; a state-law claim, in Count III, of termination of employment in violation of public policy; and a state-law claim, in Count IV, of breach of contract.

Presently before the court is the Duran Defendants' August 1, 2003, Motion For Summary Judgment (docket no. 48), which is in fact a motion for partial summary judgment on only that portion of the Jimenezs' FSLA claim seeking to recover overtime wages. In their motion, the Duran Defendants assert that the Jimenezs are exempt from the overtime wage provisions of the FLSA, because they were "employees employed in agriculture." In their response, filed August 21, 2003 (docket no. 52), the Jimenezs ask the court to deny the Duran Defendants' motion, and instead to grant them partial summary judgment on the issue of the Duran Defendants' liability for overtime wages.

The court heard oral arguments on the parties' cross-motions for partial summary judgment on October 16, 2003. At the hearing, the Jimenezs were represented by Pamela J. Walker of Sherinian and Walker, P.C., in West Des Moines, Iowa. The Duran

3

Defendants were represented by Michael J. Carroll of Coppola, Sandre, McConville & Carroll, P.C., in West Des Moines, Iowa.[1]  The cross-motions for partial summary judgment on the Duran Defendants' liability for overtime wages on the pertinent portion of the Jimenezs' FLSA claim are, therefore, fully submitted.

## B. Factual Background

Whether or not a party is entitled to summary judgment ordinarily turns on whether or not there are genuine issues of material fact for trial.  *See, e.g., Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).  However, in this case, the parties agree that there is no dispute as to the facts pertinent to the overtime wages portion of the Jimenezs' FLSA claim.  Therefore, the factual background provided here is undisputed.

The parties agree that, at all times material to the present dispute, defendants Emilio Duran and Victoria Duran conducted business in the State of Iowa as E & V Contract Farms.  The Jimenezs are former employees of Emilio and Victoria Duran.  The parties agree that the Duran Defendants employed the Jimenezs within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).  The parties also agree that the Duran Defendants have not compensated the Jimenezs for overtime work at rates not less than one and one-half times their regular rate of pay as provided in Section 7(a) of the FLSA, 29 U.S.C. § 207(a), and 29 C.F.R. § 778.225.

The Duran Defendants' business consisted of vaccinating poultry and provision of other services for poultry producers.  The Duran Defendants did not own the chickens that

---

[1]Although the Duran Defendants' motion for partial summary judgment was filed by Paul Rosenberg of Paul Rosenberg & Associates, P.C., in Des Moines, Iowa, Mr. Rosenberg was granted leave to withdraw at the beginning of the October 16, 2003, oral arguments, and the Duran Defendants' oral arguments were presented by Mr. Carroll.

they vaccinated, but instead contracted with the poultry owners to provide on-site vaccination services. E & V Contract Farms entered into verbal contracts with poultry businesses not only to inoculate chickens for various diseases, but also to debeak chickens; to move chickens from the pullet site, where chicks are raised from birth to 17 weeks old, to the layer barn, where the chickens lay eggs; and to crate chickens at the layer site before the chickens are taken to market by other contractors, who loaded and transported the poultry. All of the contracts provided for payment to Emilio Duran and Victoria Duran on a per chicken basis.

Employees of E & V Contract Farms, as a group, are involved in the entire process of raising the chickens from the age of one day old until two and one-half years old. Thus, they decrate one-day-old chicks and place them in the pullet house; then, when the chicks are 5 to 8 days old, they debeak the chickens; they perform inoculations when the chickens are seven weeks old; they move the chickens to the layer facility when the chickens are eighteen weeks old; and they crate the chickens before the chickens are transported for processing when the chickens are approximately two and one-half years old. All of the business activities of E & V Contract Farms are performed on-site at the chicken houses.

E & V Contract Farms employees do not load or unload trucks that carry the chicks to the chicken houses when the chicks are one day old, nor do they load or unload trucks when the chickens are sent for processing at age two and one-half years. Finally, E & V Contract Farms employees are not involved in trucking of the chicks to the facilities or in trucking the poultry for processing.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that either the claimant or the defending party may move for summary judgment in its favor on all or any part of a claim. *See* FED. R. CIV. P. 56(a) & (b). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A case such as this, involving only questions of law, "is particularly appropriate for summary judgment." *TeamBank, N.A. v. McClure*, 279 F.3d 614, 617 (8th Cir. 2002) (citing *Adams v. Boy Scouts of America-Chickasaw Council*, 271 F.3d 769, 775 (8th Cir. 2001)); *Bank of Am Nat'l Trust & Sav. Ass'n v. Shirley*, 96 F.3d 1108, 1111 (8th Cir. 1996) ("Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."); *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315 (8th Cir. 1996) (same).

### B. Arguments Of The Parties

In support of their motion for partial summary judgment on that part of the Jimenez' FLSA claim seeking overtime wages, the Duran Defendants argue that it is clear, under controlling precedent, that the Jimenezs fall under the exemption from overtime pay requirements for "employees employed in agriculture." First, they argue that tending to and vaccinating chickens are activities clearly included in, or are at least incidental to, the "raising of poultry," which is expressly identified as "agriculture" in the FLSA. Second, they assert that they were, themselves, directly involved in the "agricultural" activity, so that the Jimenezs, as their employees, were "aligned" with an

6

employer also involved in "agriculture." Third, they argue that the fact that they did not own the chickens that the Jimenezs tended and vaccinated is irrelevant, because an independent company can be hired to perform an "agricultural" activity, and an employee can be engaged in agriculture, even if the employee is not employed by a farmer or on a farm. The Duran Defendants rely on the Supreme Court's decision in *Holly Farms Corp. v. NLRB*, 517 U.S. 392 (1996), and this court's decision in *Baldwin v. Iowa Select Farms, L.P.*, 6 F. Supp. 2d 831 (N.D. Iowa 1998), as well as applicable regulations promulgated by the Secretary of Labor, in support of their arguments.

The Jimenezs agree that *Holly Farms* is controlling in this case, but they argue that application of that precedent leads to the conclusion that they are *not* "employees employed in agriculture." They argue that, under *Holly Farms*, the relationship between and among the employer, the employee, and the farmer or farm, is important to determination of whether the exemption is applicable. More specifically, they argue that, like the "live haul" drivers in *Holly Farms*, their only contractual relationship was with their employer, and only their employer had any contractual relationship with the producers of agricultural products, in this case, poultry. The absence of any relationship on their part with the producers, they argue, suggests that they are *not* within the agriculture exemption. They also argue that there is no basis for the Duran Defendants to argue that the Jimenezs were involved in "primary" agriculture, and even if their activities were "on the farm," they were not sufficiently "incident to or in conjunction with" the farming operations, but were instead "incident to or in conjunction with" the Duran Defendants' business of providing vaccination services for chickens. They also argue that *Baldwin* is distinguishable, because the defendant in that case actually owned and raised hogs in its own farming operations, but the Duran Defendants did not own any chickens or own or operate any chicken farming operation. In essence, the Jimenezs argue that, to be entitled to assert the exemption, the

7

Duran Defendants must show that the Jimenezs performed duties incidental to or in connection with the Duran Defendants' own farming operations, not the chicken producers' farming operations.

## C. The FLSA And The "Agriculture" Exemption

### 1. General principles

In *Baldwin v. Iowa Select Farms, L.P.*, 6 F. Supp. 2d 831 (N.D. Iowa 1998), this court laid out the statutory basis for the FLSA's overtime wage requirement and "agriculture" exemption, as follows:

> The FSLA provides that "it shall be unlawful for any person" to violate the minimum wage, overtime, and recordkeeping provisions of the Act. 29 U.S.C. § 215(a)(2) & (5); *Reich v. Stewart*, 121 F.3d 400, 404 (8th Cir. 1997). The FLSA generally requires that covered employees must be paid one-and-one-half times their regular hourly rate for hours worked in excess of forty per week. *See* 29 U.S.C. § 207(a)(1); *Christian v. City of Gladstone, Mo.*, 108 F.3d 929, 931 (8th Cir. 1997), *cert. denied*, 522 U.S. 994, 118 S. Ct. 557, 139 L. Ed. 2d 399 (1997); *Murray v. Stuckey's, Inc.*, 50 F.3d 564, 566 (8th Cir.), *cert. denied*, 516 U.S. 863, 116 S. Ct. 174, 133 L. Ed. 2d 114 (1995); *Reich v. Delcorp, Inc.*, 3 F.3d 1181, 1182 (8th Cir. 1993). However, there are several exemptions to the FLSA's overtime pay requirements set forth in 29 U.S.C. § 213(b), including the following:
>
> > (b) The provisions of section 207 of this title shall not apply with respect to–
> > * * *
> > (12) any employee employed in agriculture. . . .
>
> 29 U.S.C. § 213(b)(12). For the purposes of the FLSA, "agriculture" is defined in § 203(f) as follows:
>
> > (f) *"Agriculture" includes farming in all its branches and among other things includes the*

8

> cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 1141j(g) of Title 12), *the raising of livestock*, bees, fur-bearing animals, or poultry, *and any practices* (including any forestry or lumbering operations) *performed by a farmer or on a farm as incident to or in conjunction with such farming operations*, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

29 U.S.C. § 203(f) (emphasis added).

*Baldwin*, 6 F. Supp. 2d at 835-36. As in *Baldwin*, "[i]t is the scope of the 'employed in agriculture' exemption in § 213(b)(12) and the companion definition of 'agriculture' in § 203(f) that are presently at issue," *id.* at 836, although the question here arises in the context of conduct that is purportedly "raising of . . . poultry," rather than "raising of livestock." 29 U.S.C. § 203(f).

### 2. The "Holly Farms" analysis

In *Baldwin*, this court also examined in detail the Supreme Court's decision in *Holly Farms Corp. v. NLRB*, 517 U.S. 392 (1996), upon which both parties here rely. *See Baldwin*, 6 F. Supp. 2d at 835-39. The court will not repeat that entire discussion here. Rather, the court will identify only the points from that discussion that are salient here.

In *Baldwin*, this court noted that in *Holly Farms*, the Supreme Court recognized that "agriculture" as defined in Section 3(f) of the FLSA, 29 U.S.C. § 203(f), "'has two distinct branches,'" the first of which is "primary farming," which includes the occupations listed first in § 3(f), and "secondary farming," a broader category, "'encompassing, as stated in the second part of § 3(f): "any practices . . . performed by a farmer or on a farm as an incident to or in conjunction with such farming operations."'"

9

*Baldwin*, 6 F. Supp. 2d at 837 (quoting *Holly Farms*, 517 U.S. at 398, in turn quoting 29 U.S.C. § 203(f)). Next, this court explained that "the Court's analysis in *Holly Farms* proceeded in two stages: First, the Court considered whether the employer was engaged in 'primary' agriculture, *[Holly Farms*, 517 U.S.] at 399-400, 116 S. Ct. at 1396; second, only because the answer to the first question was negative, the Court considered whether the employer was engaged in 'secondary' agriculture. *Id.* at 401-04, 116 S. Ct. at 1396." *Id.* The second step in this two-stage analysis, this court explained, was, again, broken down into two strands. *Id.* On the first strand, "the Court considered whether the employees in question were engaged in activity 'performed by a farmer,'" while on the second strand, the Court considered whether the employees "were employed 'on a farm' performing activities 'as an incident to' or 'conjoined with' a primary agriculture activity." *Id.* (quoting *Holly Farms*, 517 U.S. at 400-04).

### 3. The "Holly Farms analysis" in this case

#### a. Were the defendants engaged in "primary" agriculture?

At the first stage of the "*Holly Farms* analysis," the question is "whether the employer was engaged in 'primary' agriculture." *Holly Farms*, 517 U.S. at 388-400; *Baldwin*, 6 F. Supp. 2d at 837. As this court explained in *Baldwin*,

> In *Holly Farms*, on the first [stage] of the analysis, the Court concluded that independent growers of broiler chickens under contract to Holly Farms were engaged in "primary" agriculture, but "live-haul" employees of Holly Farms, who caught chickens at contract farms and delivered them to Holly Farms' processing plant, were not 'themselves engaged in raising poultry." *[Holly Farms*, 517 U.S.] at 400, 116 S. Ct. 1396.

*Baldwin*, 6 F. Supp. 2d at 837. It should be noted that, for present purposes, it is also significant that the "independent growers" who were found to be engaged in "primary"

agriculture in *Holly Farms* were not the owners of the chickens, but were instead under contract with Holly Farms Corporation to raise to "broiler" weight chickens owned by Holly Farms Corporation. *See Holly Farms*, 517 U.S. at 395 ("Holly Farms hatches broiler chicks at its own hatcheries, and immediately delivers the chicks to the farms of independent contractors. The contractors then raise the birds into full-grown broiler chickens. Holly Farms pays the contract growers for their services, but retains title to the broilers and supplies the food and medicine necessary to their growth."). The point to be gained from this portion of the *Holly Farms* decision is that a party under contract to perform "primary" agriculture, such as "raising of . . . poultry," *see* 29 U.S.C. § 203(f), is, itself, engaged in "primary" agriculture, whether or not it owns the poultry. This point is also supported by regulations promulgated by the Secretary of Labor to interpret the meaning of "agriculture" as defined in the FLSA.[2] For example, one regulation recognizes that the "primary" meaning of agriculture under 29 U.S.C. § 203(f) "includes farming in all its branches" and that activities "[l]isted as being included 'among other things' in the primary meaning are certain specific farming operations such as . . . raising of . . . poultry. If an employee is employed in any of these activities, he is engaged in agriculture regardless of whether he is employed by a farmer or on a farm." 29 U.S.C. § 780.105(b).

Another regulation provides that "[e]mployees are employed in raising of . . . poultry only if their operations relate to animals of the type named and constitute 'raising' of such animals. If these two requirements are met, it makes no difference for what purpose the animals are raised or where the operations are performed." 29 C.F.R.

---

[2]Such agency regulations are entitled to considerable deference here, because the interpretations relate to a statute that the agency administers. *See, e.g., Baldwin*, 6 F. Supp. 2d at 840 n.2.

11

§ 780.199. Here, the Jimenezs' operations did, indeed, relate to animals of the type named, specifically, chickens, so that the question is whether their operations constituted "raising such animals." *Id.*

The regulations also explain, at least generally, what constitutes the "primary" agriculture activity of "raising of . . . poultry." One regulation explains,

> (b) *The "raising" of poultry includes the breeding, hatching, propagating, feeding, and general care of poultry.* Slaughtering, which is the antithesis of "raising," is not included. To constitute "agriculture," slaughtering must come within the secondary meaning of the term "agriculture." The temporary feeding and care of chickens and other poultry for a few days pending sale, shipment or slaughter is not the "raising" of poultry. However, feeding, fattening and caring for poultry over a substantial period may constitute the "raising" of poultry.

29 C.F.R. § 780.125(b) (emphasis added). This regulation establishes that "general care of poultry" and "caring for poultry over a substantial period" may constitute a "primary" agriculture activity. Another regulation also addresses a common contractual arrangement for raising poultry, as follows:

> Feed dealers and processors sometimes enter into contractual arrangements with farmers under which the latter agree to raise to marketable size baby chicks supplied by the former who also undertake to furnish all the required feed and possibly additional items. Typically, the feed dealer or processor retains title to the chickens until they are sold. Under such an arrangement, the activities of the farmers and their employees in raising the poultry are clearly within section 3(f). The activities of the feed dealer or processor, on the other hand, are not "raising of poultry" and employees engaged in them cannot be considered agricultural employees on that ground. Employees of the feed dealer or processor who perform work on a farm as an incident to or in

12

conjunction with the raising of poultry on the farm are employed in "secondary" agriculture[.]

29 C.F.R. § 780.126. Like *Holly Farms*, this regulation suggests that a party under contract to perform "primary" agriculture, such as "raising of . . . poultry," *see* 29 U.S.C. § 203(f), is, itself, engaged in "primary" agriculture, whether or not it owns the poultry.

Contrary to the Jimenezs' arguments, the court concludes that these precedents lead to the conclusion that the Duran Defendants and their employees were engaged in "primary" agriculture. Although the Jimenezs were not employed by the owner of the chickens, they were employed by a party under contract to perform various activities that were part of the "raising of . . . poultry," *see Holly Farms*, 517 U.S. at 395 & 400; 29 U.S.C. § 780.105(b) ("If an employee is employed in any of these activities [identified in 29 U.S.C. § 203(f) as 'primary' agriculture], he is engaged in agriculture regardless of whether he is employed by a farmer or on a farm."), that is, conduct that constituted "general care of poultry." 29 C.F.R. § 780.125(a). Although the Jimenezs were not employed to feed and water the poultry on a daily basis, or to provide other "daily" care, the undisputed record is that they were employed in other routine, but periodic and labor-intensive, phases in the general care of poultry, including decrating one-day-old chicks and placing them in the pullet house; debeaking the chicks when the chicks were 5 to 8 days old; inoculating the chickens when the chickens were seven weeks old; moving the chickens to the layer facility when the chickens were eighteen weeks old; and crating the chickens before they are transported for processing when the chickens were approximately two and one-half years old. The fact that the Jimenezs were not employed by the farmer who owned the poultry, but by a contractor who contracted with the owner of the poultry to provide these kinds of "care," does not change this conclusion. *See Holly Farms*, 517

13

U.S. at 400; 29 U.S.C. § 780.105(b) ("If an employee is employed in any of these ['primary' agriculture] activities, he is engaged in agriculture regardless of whether he is employed by a farmer or on a farm.").

Therefore, the Jimenezs were engaged in "primary" agriculture, and as such, their employees fell within the "agriculture" exemption from overtime pay requirements of the FLSA. *See* 29 U.S.C. §§ 203(f) & 213(b)(12).

### b. Were the plaintiffs engaged in "secondary" agriculture?

Although the Court in *Holly Farms* did not consider the question of whether the employees were engaged in "secondary" agriculture, because the Court had concluded that the defendants were engaged in "primary" agriculture, *see Baldwin*, 6 F. Supp. 2d at 837 (citing *Holly Farms*, 517 U.S. at 400-04), this court nevertheless deems it prudent to consider, in the alternative, whether or not the Jimenezs fell within the FLSA's "agriculture" exemption from overtime pay requirements on the ground that they were engaged in "secondary" agriculture. This stage of the "*Holly Farms* analysis" is somewhat more complicated.

### i. Pertinent considerations.

As the Court explained in *Holly Farms*, the "secondary" meaning of "agriculture" under 29 U.S.C. § 203(f) considers "whether the employees in question were engaged in activity 'performed by a farmer,' [*Holly Farms*, 517 U.S.] at 400, 116 S. Ct. at 1396, and whether they were employed 'on a farm' performing activities 'as an incident to' or 'conjoined with' a primary agriculture activity. *Id*. at 401-04, 116 S. Ct. at 1396." *Baldwin*, 6 F. Supp. 2d at 837. Thus, this stage of the analysis has two strands: the "performed by a farmer" strand and the "on the farm" strand. *Id*. 837-38. Plainly, the first strand is not applicable here, because neither the Duran Defendants nor the Jimenezs were "farmers." Thus, the pertinent strand is the second, the "on the farm" strand.

14

As the Supreme Court explained in *Holly Farms*, "Congress specifically added the words 'or on the farm' to FLSA § 3(f) to address some Senators' objections that the exemption otherwise would not cover 'the threshing of wheat or other functions necessary to the farmer if those functions were not performed by the farmer and his hands, but by separate companies organized for and devoted solely to that particular job.'" *Holly Farms*, 517 U.S. at 403 n.8 (quoting *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 767 (1949), in turn citing 81 CONG. REC. 7653 (1937)). The pertinent regulations include a similar observation:

> The legislative history makes plain that this ["on a farm"] language was particularly included to make certain that independent contractors such as threshers of wheat, who travel around from farm to farm to assist farmers in what is recognized as a purely agricultural task . . . should be included within the definition of agricultural employees.

29 C.F.R. § 780.128.

*ii.* **Work "on a farm."** Regulations promulgated by the Secretary of Labor also clarify the meaning of "on a farm." Specifically,

> If a practice is not performed by a farmer, it must, among other things, be performed "on a farm" to come within the secondary meaning of "agriculture" in section 3(f). Any practice which cannot be performed on a farm, such as "delivery to market," is necessarily excluded, therefore, when performed by someone other than a farmer (see *Farmers Reservoir Co. v. McComb*, 337 U.S. 755; *Chapman v. Durkin*, 214 F. 2d 360, *cert. denied* 348 U.S. 897; *Fort Mason Fruit Co. v. Durkin*, 214 F. 2d 363, *cert. denied* 348 U.S. 897). Thus, employees of an alfalfa dehydrator engaged in hauling chopped or unchopped alfalfa away from the farms to the dehydrating plant are not employed in a practice performed "on a farm."

15

29 C.F.R. § 780.134. Another regulation provides, in pertinent part, as follows:

> Employees engaged in . . . inspecting and culling flocks of poultry . . . are examples of the types of employees of independent contractors who may be considered employed in practices performed "on a farm." . . . Even though an employee may work on several farms during a workweek, he is regarded as employed "on a farm" for the entire workweek if his work on each farm pertains solely to farming operations on that farm.

29 C.F.R. § 780.136.

The court finds that there is no dispute that all of the work performed by employees of the Duran Defendants, which consisted of vaccinating and tending to poultry, was performed "on a farm," and indeed, was comparable to " inspecting and culling flocks of poultry." *Id.* The fact that the employees may have performed that work on a number of farms during a work week does not remove them from the scope of the "agriculture" exemption, because there appears to be no dispute that on each farm, they performed work that pertained "solely to farming operations on that farm." *Id.*

*iii.* ***Connection to farming operations***. As the Supreme Court also made clear in *Holly Farms*, this strand requires more than employment "on the farm," as it also requires work "'as an incident to or in conjunction with such farming operations.'" *Holly Farms*, 517 U.S. at 403 n.8 (quoting 29 U.S.C. § 203(f)); *see also id.* at 401; 29 C.F.R. § 780.129; 29 C.F.R. § 780.141. It is undisputed that the activities of the plaintiffs were conducted "on the farm" and "for the farmer," indeed, on several farms for several farmers. *Cf.* 29 C.F.R. § 780.143 (practices on a farm not performed for the farmer, such as installing utility lines, are part of a nonfarming enterprise, and thus, do not fall within the exemption). However, in this part of the inquiry, the status of the claimants' employer with respect to the particular activity at issue is relevant to the inquiry. *Baldwin Farms*,

6 F. Supp. 2d at 838 (citing *Holly Farms*, 517 U.S. at 404).

> Thus, employees [in *Holly Farms*] engaged in activities surrounding Holly Farms' egg-hatching and pullet-raising operations were engaged in poultry-raising operations, that is, they were aligned with activities of their employer that constituted "primary" agriculture. [*Holly Farms*, 517 U.S. at 404.] Hence, they were "agricultural laborers." *Id.* However, live-haul crews were aligned with slaughter and processing activities, that is, with activities of their employer when it was not engaged in "primary" agriculture.

*Id.* at 838.

Pertinent regulations make clear that something more than a "connection" to farming is required:

> In order for practices other than actual farming operations to constitute "agriculture" within the meaning of section 3(f) of the Act, it is not enough that they be performed by a farmer or on a farm in connection with the farming operations conducted by such farmer or on such farm, as explained in §§ 780.129 through 780.143. *They must also be performed "as an incident to or in conjunction with" these farming operations.* The line between practices that are and those that are not performed "as an incident to or in conjunction with" such farming operations is not susceptible of precise definition. *Generally, a practice performed in connection with farming operations is within the statutory language only if it constitutes an established part of agriculture, is subordinate to the farming operations involved, and does not amount to an independent business.* Industrial operations (*Holtville Alfalfa Mills v. Wyatt*, 230 F. 2d 398) and processes that are more akin to manufacturing than to agriculture (*Maneja v. Waialua*, 349 U.S. 254; *Mitchell v. Budd*, 350 U.S. 473) are not included. This is also true when on-the-farm practices are performed for a farmer.

29 C.F.R. § 780.144 (emphasis added). The regulations also delve further into the

17

distinction between activity that is "part of the agricultural activity" and activity that is "an independent business," as follows:

> *The character of a practice as a part of the agricultural activity or as a distinct business activity must be determined by examination and evaluation of all the relevant facts and circumstances in the light of the pertinent language and intent of the Act.* The result will not depend on any mechanical application of isolated factors or tests. Rather, *the total situation will control* (*Maneja v. Waialua*, 349 U.S. 254; *Mitchell v. Budd*, 350 U.S. 473). *Due weight should be given to any available criteria which may indicate whether performance of such a practice may properly be considered an incident to farming within the intent of the Act.* Thus, the general relationship, if any, of the practice to farming as evidenced by common understanding, competitive factors, and the prevalence of its performance by farmers (see § 780.146), and similar pertinent matters should be considered. Other factors to be considered in determining whether a practice may be properly regarded as incidental to or in conjunction with the farming operations of a particular farmer or farm include the size of the operations and respective sums invested in land, buildings and equipment for the regular farming operations and in plant and equipment for performance of the practice, the amount of the payroll for each type of work, the number of employees and the amount of time they spend in each of the activities, the extent to which the practice is performed by ordinary farm employees and the amount of interchange of employees between the operations, the amount of revenue derived from each activity, the degree of industrialization involved, and the degree of separation established between the activities. With respect to practices performed on farm products (see § 780.147) and in the consideration of any specific practices (see §§ 780.148-780.158 and 780.205-780.214), there may be special factors in addition to those above mentioned which may aid in the determination.

18

29 C.F.R. § 780.145 (emphasis added).

The last regulation that the court finds is specifically pertinent here is a regulation providing examples of practices within § 3(f) if the requirements set forth above are otherwise met:

> (b) *The following are other examples of practices which may qualify as "agriculture" under the secondary meaning in section 3(f), when done on a farm, whether done by a farmer or by a contractor for the farmer, so long as they do not relate to farming operations on any other farms:* The operation of a cook camp for the sole purpose of feeding persons engaged exclusively in agriculture on that farm; artificial insemination of the farm animals; custom corn shelling and grinding of feed for the farmer; the packing of apples by portable packing machines which are moved from farm to farm packing only apples grown on the particular farm where the packing is being performed; *the culling, catching, cooping, and loading of poultry*; the threshing of wheat; the shearing of sheep; the gathering and baling of straw.
>
> (c) It must be emphasized with respect to all practices performed on products for which exemption is claimed that they must be performed only on the products produced or raised by the particular farmer or on the particular farm (*Mitchell v. Huntsville Nurseries*, 267 F. 2d 286; *Bowie v. Gonzalez*, 117 F.2d 11; *Mitchell v. Hunt*, 263 F.2d 913; *NLRB v. Olaa Sugar Co.*, 242 F. 2d 714; *Farmers Reservoir Co. v. McComb*, 337 U.S. 755; *Walling v. Peacock Corp.*, 58 F. Supp. 880; *Lenroot v. Hazelhurst Mercantile Co.*, 153 F.2d 153; *Jordan v. Stark Bros. Nurseries*, 45 F. Supp. 769).

29 C.F.R. § 780.158(b) & (c) (emphasis added).

*iv.* ***Is the necessary connection present here?*** First, the court is simply not convinced that either *Holly Farms* or pertinent regulations support the Jimenezs' argument that they cannot be "agricultural employees" just because their only contractual

19

relationship was with their employer, and only their employer had any contractual relationship with the producers of poultry. The absence of any contractual relationship on their part with the producers simply does not suggest that they are *not* within the agriculture exemption. Instead, the court finds that the Jimenezs' argument reads the "on the farm" language out of the statute. Again, the "on the farm" language was added to § 3(f) of the FLSA, 29 U.S.C. § 203(f), "to address some Senators' objections that the exemption otherwise would not cover 'the threshing of wheat or other functions necessary to the farmer if those functions were not performed by the farmer and his hands, but by separate companies organized for and devoted solely to that particular job.'" *Holly Farms*, 517 U.S. at 403 n.8 (quoting *McComb*, 337 U.S. at 767, in turn citing 81 CONG. REC. 7653 (1937)); *accord* 29 C.F.R. § 780.128. If the Jimenezs' argument were to prevail, employees of wheat threshers or other separate companies organized for and devoted solely to a particular job would fall outside of the "agriculture" exemption, simply because the separate company, rather than the individual employees, contracted with the farmer, which is plainly contrary to the legislative intent of the "on the farm" language. It is also clear to the court that the activities of tending and vaccinating poultry are "aligned" with the "primary" agriculture activity of "raising of . . . poultry" in the same way that "threshing" is aligned with the "primary" agriculture activity of raising and harvesting crops, as "functions necessary to the farmer," even though the activity in question is performed by a "'separate compan[y] organized for and devoted solely to that particular job.'" *See id.* (quoting *McComb*, 337 U.S. at 767, in turn citing 81 CONG. REC. 7653 (1937)) & 404 (examining the "alignment" of the activity with "primary" agriculture).

Moreover, the work in which the Jimenezs were engaged satisfies the test set out in 29 C.F.R. § 780.144 for the necessary "connection" to farming, *i.e.*, whether that work is "incident to or in conjunction with" farming operations. Tending and vaccinating

chickens "constitutes an established part of agriculture," the "raising of . . . poultry"; it is "subordinate to the farming operations involved," in that it has no other purpose beyond "raising of . . . poultry"; and it "does not amount to an independent business," again, because it has no other purpose beyond "raising of . . . poultry." *See* 29 C.F.R. § 780.144 ("Generally, a practice performed in connection with farming operations is within the statutory language only if it constitutes an established part of agriculture, is subordinate to the farming operations involved, and does not amount to an independent business."); *see also* 29 C.F.R. § 780.145 (determining the relationship between the activity and farming in light of "any available criteria," including "the general relationship . . . of the practice to farming" and "the degree of separation established between the activities"); 29 C.F.R. § 780.142 ("Whether or not some practices are performed in connection with farming operations conducted on the farm where they are performed must be determined with reference to the purpose of the farmer for whom the practice is performed."); *and compare* 29 C.F.R. § 780.141 (identifying practices lacking the necessary connection). This is so, even if tending to and vaccinating poultry are practices performed by a "'separate compan[y] organized for and devoted solely to that particular job.'" *Holly Farms*, 517 U.S. at 403 n.8 (quoting *McComb*, 337 U.S. at 767, in turn citing 81 CONG. REC. 7653 (1937)). Moreover, the practices at issue here, vaccinating and tending to poultry, including debeaking, crating and decrating, and transferring between poulet and layer facilities on each farm, are similar to activities of "culling, catching, cooping, and loading poultry," which are recognized under a pertinent regulation as "examples of practices which may qualify as 'agriculture' under the secondary meaning." *See* 29 C.F.R. § 780.158(b).

Therefore, the court concludes that the Jimenezs were engaged in "secondary" agriculture, in that their work for the Duran Defendants was "as an incident to or in

21

conjunction with" farming operations, and as such, the Jimenezs fell within the "agriculture" exemption from the overtime pay requirements of the FLSA. *See* 29 U.S.C. §§ 203(f) & 213(b)(12).

## III. CONCLUSION

Upon the foregoing, the court concludes that it is the Duran Defendants, not the Jimenezs, who are entitled to partial summary judgment on that portion of the Jimenezs' FLSA claim seeking overtime pay, because, as a matter of law, the Jimenezs were exempt from overtime pay requirements of the FLSA pursuant to 29 U.S.C. § 213(b)(12) as "employees employed in agriculture" within the meaning of 29 U.S.C. § 203(f).

THEREFORE,

1.      The Duran Defendants' August 1, 2003, Motion For Summary Judgment (docket no. 48), seeking partial summary judgment on the overtime pay portion of the Jimenezs' FLSA claim in Count I of their Amended Complaint, is **granted**.

2.      The Jimenezs' August 21, 2003, cross-motion for partial summary judgment, set forth in their Resistance To Defendants' Motion For Summary Judgment And Motion For Partial Summary Judgment (docket no. 52), is **denied**.

**IT IS SO ORDERED.**

**DATED** this 20th day of October, 2003.

_Mark W. Bennett_
_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA